ON PETITION FOR REHEARING
LETTS, Judge.
The opinion in this case filed March 18, 1977, is vacated and withdrawn.
The order of the trial court is affirmed.
The parties, married for little more than a year before separating, and each having been married before, engaged in a bitter struggle over the division of their property, culminating in the award of $13,000 lump sum alimony to the wife. This cash award constitutes the principal ground for appeal by the husband, and the only one to which we accord merit.
The wife has filed no briefs in this court, claiming lack of funds to hire counsel.
An examination of the transcript reveals testimony that, to say the least, is conflicting. For example, the wife claimed to have put up the funds to purchase a property subsequently sold which yielded net proceeds of approximately $13,900. The husband admitted that the funds to purchase same did come from her bank account, and that title to said property had originally been placed in her name alone; however, he insisted that he, not his wife, was the source of most of those funds. The wife denied this. The foregoing is but one of the many irreconcilable conflicts in testimony permeating 126 pages of transcript, full of bizarre claims and counterclaims, including the admitted continued involvement of the husband’s previous wife in many of his business and emotional affairs. As an example of that, she, the first wife, signed the mortgage and note to the current residence, still representing herself as his wife, although their divorce was final, and the marriage now at issue about to take place. This current residence was bought, according to the wife, in part, with her money, which included the proceeds from the sale of the property first above described, and title placed in the husband’s name, as trustee. The wife alleges that the trusteeship was for her benefit, while the husband denies this and explained it as being for the benefit of their one child born out of wedlock about two years before the marriage. The court below awarded this currently owned residence to the husband.
At the trial, the husband (a practicing C.P.A.) produced a financial statement to reflect virtually no assets, and little income, but omitted from it were obligations owed to him by his family and previous wife for *1061 the stated reason that same were “bad debts.” Also, his statement omitted any equity in the current residence, which the husband claimed was being foreclosed on by his own brother, for nonpayment of a small second mortgage.
It is obvious that the trier of the fact largely preferred to believe the wife’s testimony, for at the conclusion of the proceedings, while announcing his findings, he said, in part, as follows:
There are many cases which come in front of the court that are financially confusing like this one. But usually we have people of very limited education. The affidavits [in this case] are inaccurate, some of the poorest affidavits for educated people I’ve ever had — just terrible.
Also, I’d like to observe that listening to the testimony of both sides, I’m not impressed with the testimony of Mr. East. I think that he has been general. I think that he has been bombastic in his testimony. I think that it’s hard to sit here and say whether or not the person is telling the truth or not because nobody can look and tell. God didn’t give me the power to look at them and tell whether they’re telling the truth or not.
But the vagueness and the idea that his testimony should be believed because it comes out of his mouth without supporting evidence. I do hope by the time he comes back on the custody question, he has a better presentation and a better demeanor and a better attitude concerning his testimony . . . Furniture, I’d like to go ahead and award to the wife in the home. I believe her testimony on the furniture. And I believe she’s entitled to the furniture. There may be some specific things that the husband wants to document that are in fact his. I will honor these in the event that you get the documentation out, make the presentation.
The principal point raised by the husband on appeal, concerns the award of $13,000 in lump sum alimony, the husband arguing that since his financial affidavit submitted indicates that he does not have it, the court cannot award it. The basic criteria for the award of any kind of alimony are (1) the husband’s ability to pay, (2) the needs of the wife, and (3) the wife’s standard of living during the marriage. Caracristi v. Caracristi, 324 So.2d 634 (Fla. 2nd DCA 1976). In the case now before us, it is obvious from the judge’s quoted language that he largely did not believe either the husband’s testimony or his financial affidavit. Moreover, the record reflects testimony to the effect that the husband, a practicing C.P.A., had income, in the year prior to the divorce proceedings, in excess of $32,000.
As to the wife’s needs and standard of living, she is able bodied and employable; however, there is ample testimony to support a finding that she owned intangible personal property in her own right when she first entered into her relationship with the husband. There is testimony that she later bought and paid for a residential property, and that money from the sale of that residential property was used in the purchase of the present home. There is also testimony that all of her assets have been dissipated by her husband, and much of it given to the first wife, and the court certainly awarded the present home to him. Under such circumstances, if believed by the court below, her need now is obvious. Her former standard of living, both before and during the marriage, was superior, and her present plight, without assets or a home, pathetic.
For all of the foregoing reasons, we cannot say that it would be an abuse of discretion for the trial judge to conclude that the husband had the ability to pay the sum of $13,000 to the wife, even if he did not have the ready cash, available, especially where no periodic alimony, whatever, accompanied the award.
Affirmed.
CROSS and ANSTEAD, JJ„ concur.